1

2

3
THE HONORABLE RICARDO MARTINEZ

4

5

6

7

8

9
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11
| | |
|---|---|
| HOLLAND AMERICA LINE INC. and WINDSTAR SAIL CRUISES LTD., on behalf of themselves as former agents, owners and operators of the former vessel M/S/Y WIND SONG, and together on behalf of their subrogated insurers, | **AT LAW AND IN ADMIRALTY** |
| Plaintiffs, | Case No.:  CV04-1368RSM |
| vs. | **MOTION AND SUPPORTING MEMORANDUM BY DEFENDANT BUREAU VERITAS, S.A. TO DISMISS COMPLAINT** |
| WÄRTSILÄ NORTH AMERICA, INC., WÄRTSILÄ NDS, WÄRTSILÄ NSD AUSTRALIA PTY, LTD., WÄRTSILÄ NEW ZEALAND, LTD., and BUREAU VERITAS, S.A., | **Note for Motion Docket: November 19, 2004** |
| Defendants. | |

## **MOTION**

Defendant Bureau Veritas, S.A. moves to dismiss the complaint under FRCP 12(b) on the following grounds: (1) the Court lacks *in personam* jurisdiction over it; (2) the exclusive forum for the litigation of this dispute is Nanterre, France; and (3) the doctrine of *forum non conveniens*. The motion is supported by the incorporated memorandum, the supporting affidavit of Francois Teissier, and the supporting declarations of Wilfried Drean and Pierre Frey.

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3033
(206) 340-1000

## FACTUAL BACKGROUND

Bureau Veritas, S.A. is a French corporation with its principal office located at 17 bis Place des Reflets, La Defense 2, Courbevoie, France.  It is one of several classification societies, the business of which is to set standards for the quality and integrity of vessels and to perform surveys to determine whether vessels are in compliance with the classification society's rules and regulations, national laws and international conventions.  *See, Carbotrade S.p.A. v. Bureau Veritas,* 99 F.3d 86, 88 (2d Cir.1996). Bureau Veritas, S.A. does not have an office, general agent, or agent in the state of Washington. Furthermore, Bureau Veritas does not have any employees or officers located here.  See declaration of Drean and affidavit of Teissier

Bureau Veritas North America, Inc. is a Delaware corporation with its principal and only place of business located at 1850 Eller Drive, Port Everglades, Florida.  Bureau Veritas North America, Inc. is a wholly owned subsidiary of Bureau Veritas Holdings, Inc., another Delaware corporation which is a subsidiary of Bureau Veritas, S.A.  No officers or employees of Bureau Veritas, S.A. are employed at the offices of Bureau Veritas North America, Inc. or anywhere else in the United States.

Employees of Bureau Veritas, S.A. do not perform surveys of vessels in the United States. Surveys of vessels, which are conducted in the United States in order to meet the classification standards of Bureau Veritas, S.A., are conducted by Bureau Veritas North America, Inc., which bills the owner directly for its services and retains the revenue.

The WINDSONG is a Bahamian flagged vessel, (Complaint, Paragraph 10) owned and operated by Windstar Sail Cruises, Ltd.  ("Windstar"), a Bahamian entity (Complaint, Paragraphs 4-5) that was built by a French shipyard, the Societe Nouvelle des Ateliers & Chantiers du Havre in the port of Le Havre, France in 1987. (Complaint, Paragraph 10) Windstar sought to have its vessel, the WINDSONG, classed with Bureau Veritas, S.A.  As part of this process, Bureau Veritas, S.A.

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3033
(206) 340-1000

forwarded to Windstar two agreements at different times, which were virtually identical, setting forth the rights and obligations of the owner and defining the role and responsibility of Bureau Veritas, S.A. The first contract was signed by an agent for Windstar in Oslo, Norway, on February 23, 1988, and the second contract was signed by a different agent for Windstar, Holland America Line Westours, Inc., in Seattle on May 30, 1991. See Frey Declaration, Exhibits A and B.  Notably, plaintiff Holland America Lines, Inc. is not a party to either contract.

Both agreements contain a forum selection clause in Article XI, which provides for the litigation of all disputes between the parties before the Court of Nanterre in France. See Frey Declaration, Paragraph 9.

Windstar purchased the vessel during its construction in 1987.  (Complaint, paragraph 10) After construction, Bureau Veritas, S.A. surveyed the vessel WINDSONG on numerous occasions. These surveys occurred at the shipyard in France during its original construction in 1987 and thereafter, in accordance with the agreements with the owner, in various ports of the world including Auckland New Zealand. (Id.)  None of these surveys occurred in the state of Washington or Vancouver, Canada.  See Tessier Affidavit, Paragraphs 5 and 7.

Plaintiffs filed this suit in June, 2004 naming as defendants three different Wartsila entities, two of which are located outside of the United States and Bureau Veritas, S.A., based in Paris.  As set forth in the companion motion to dismiss of Wartsila Australia Pty. Ltd. et al., another French entity, Wartsila Diesel Normed, S.A. actually manufactured and sold engines to be installed on the Windsong to the French shipyard in 1985.  See Lindback Declaration in support of Wartsila Motion to Dismiss at Paragraph 8.  Neither the shipbuilder, the French entity which would normally be responsible for design and construction defects, nor the French engine manufacturer have been named as defendants.

LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3033
(206) 340-1000

Significantly, it appears that the only connection with this State and this forum to this action is the domicile of the <u>agent</u> of the owner and operator of the vessel who is not a party to either of the contracts referred to above.  All the other parties have their principal office addresses and headquarters located outside of the State of Washington. Moreover, as set forth in the Declaration of Chris Arundell, in support of a request for an order and ad interim stipulation of value in the separate proceeding initiated by Winsdstar for exoneration from or limitation of liability following the loss, annexed as Exhibit A to Mr. Arundell's affidavit submitted in support of a default judgment against Bureau Veritas, S.A. dated August 11, 2004, the only entity which apparently suffered damage as a result of the loss of the Windsong was Windstar.  Indeed, plaintiff Holland America Line Inc. was not even a party to the limitation proceeding.  Thus, this dispute is really one between a Bahamian citizen and a French citizen over events which occurred primarily in France and possibly New Zealand and a loss which occurred in the South Pacific.

## LEGAL ARGUMENT

**I. THE COURT LACKS *IN PERSONAM* JURISDICTION OVER DEFENDANT BUREAU VERITAS, S.A.**

Federal law distinguishes between general and specific jurisdiction: the former is founded on a party's continuous contacts with the forum state which are unrelated to the litigation at hand whereas the latter focuses on contacts related solely to the cause of action.  General jurisdiction exists when a defendant has systematic and continuous contact with a forum (see, e.g., *Exton v. Our Farm, Inc.*, 943 F.Supp. 432 (D.N.J. 1996)), whereas specific jurisdiction arises from contacts related solely to the

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3033
(206) 340-1000

cause of action.  For the reasons set forth below, neither basis is sufficient for the exercise of this Court's *in personam* jurisdiction over Bureau Veritas, S.A.

A. There Is No Basis On Which The Court Can Exercise General Jurisdiction Over
   Bureau Veritas, S.A.

Bureau Veritas, S.A. is a  French company with its principal places of business located in France.  It does not conduct or transact any business activities in Washington.  Bureau Veritas, S.A. does not own, lease or rent any property in Washington.  See Drean Declaration, Paragraph 2.   It does not advertise in Washington, nor has it engaged in any other activity which can be construed as the solicitation of business in this state. (Id., Paragraphs 6-7)  It does not maintain offices, telephone lines or listings in Washington nor does it have any employees, agents or representatives within the state. (Id., Paragraphs 3, 8)   In short, Bureau Veritas, S.A. has not established any meaningful contacts within Washington by establishing systematic and continuous ties to the State or by invoking the benefits of Washington law. As such, no basis exists on which the Court can exercise general jurisdiction over Bureau Veritas, S.A.

B. Defendant Has Not Purposely Directed Its Activities To The Forum And Had
   No Fair Warning About Being Subject To The Forum's Jurisdiction

Before a basis can exist for the assertion of specific personal jurisdiction, defendant must also have sufficient minimum contacts with the forum to satisfy the due process clause of the Fourteenth Amendment so that maintenance of the suit does not offend traditional notions of fair play and substantial justice.  *See, e.g., Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-40, 2 L.Ed.2d 1283, *reh'g denied*, 358 U.S. 858, 79 S.Ct. 10 (1958).   In this case, Plaintiff must prove that sufficient minimum contacts exist between defendant and the forum state by showing that the

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3033
(206) 340-1000

defendant had "fair warning" that its particular activity would subject it to the jurisdiction of a foreign sovereign.

Due process mandates that defendant have "fair warning that a particular activity may subject it to the jurisdiction of a foreign court" in order that traditional notions of justice are not offended. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985); *Madara v. Hall*, 916 F.2d 1510 (11th Cir. 1990); *Van Bursick v. Carey Canadian Mines, Ltd.*, 760 F.2d 481 (3rd Cir. 1985) (holding that minimum contacts analysis not only considers the inconvenience to a defendant, but also protects that defendant who has done nothing to anticipate the exercise of a forum's jurisdiction over it); *Exton v. Our Farm, Inc.*, 943 F.Supp. 432 (D.N.J. 1996).  In addition, where a defendant asserts jurisdictional defenses and has no continuous presence within the forum, the burden is on the plaintiff to particularize sufficient minimum contacts.  *Compagnie des Bauxites de Guinee*, 651 F.2d 877 (3d Cir. 1981); *Regency Oldsmobile Inc. v. General Motors Corp.*, 685 F.Supp. 91 (D.N.J. 1988).  Minimum contacts may be established where a plaintiff demonstrates that the defendant purposely directs its activities at the forum, intending that such acts have an effect therein.  However, the

> unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state... it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities with the forum State, thus invoking the benefits and protections of its laws.

*Madara* 916 F.2d at 1516, *quoting  Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-40, 2 L.Ed.2d 1283, *reh'g denied*, 358 U.S. 858, 79 S.Ct. 10 (1958); *see also Alexander v. Cigna Corp.* 991 F.Supp. 427 (D.N.J. 1998).  In addition, even where minimum contacts can be established, the courts must further evaluate the fairness of exercising personal jurisdiction over a defendant. *Asahi Metal Indus. Co., Ltd. v. Superior Court of* California, 480 U.S. 102, 107 S.Ct. 1096, 94 L.Ed.2d 92 (1987);

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3033
(206) 340-1000

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985);

*Eaton Corp. v. Maslym Holding Co.*, 929 F.Supp. 792 (D.N.J. 1998).

As an example, the Supreme Court in *Burger King*, supra, found that defendant, which had notice sufficient to satisfy due process through contract documents and the course of the parties' dealings, could be subject to suit in plaintiff's forum choice.  There, a franchisor brought suit in its home state of Florida for breach of the franchise agreement.  Defendant, a Michigan franchisee, raised jurisdictional defenses, specifically claiming that the contractual dealings left defendant financially unprepared to defend litigation in Florida.  The Court found substantial evidence that defendant established meaningful contacts with Florida and could therefore reasonably expect to be haled into its courts: Burger King, the franchisor, was headquartered in Miami; the franchise agreement was negotiated in Miami; one level of the two-tiered administration of nationwide franchise operations was overseen by Florida entities; the franchise agreement was made and entered into in Florida; and, the choice of law clause in the franchise agreement designated application of Florida law over all disputes. The franchisee was also found to be a sophisticated business person who could reasonably anticipate that his actions connected to the franchise dealings might subject him to Florida's jurisdiction.

Based on these factual findings, the Court concluded that the defendant had "availed himself of the privilege of conducting business there, and because his activities are shielded by the 'benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Id.* at 476, 2183 (citations omitted).

Conversely, in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Supreme Court held that an Oklahoma court's exercise of *in personam* jurisdiction over a defendant non-resident automobile retailer and its wholesale distributor in a products-liability action was improper when defendant's only tie to the forum was the fact that a car

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3033
(206) 340-1000

sold by defendant was involved in an Oklahoma accident.  Plaintiff and defendants were New York residents, and the sales transaction also took place in New York.  The Court examined the record and found that the relationship between the retailer and distributor was contractual only, based on their distribution arrangements with the manufacturers; that neither defendant did business in Oklahoma or shipped or sold product to that state; that neither had an agent designated to accept process there; and that it did not solicit business or advertise in Oklahoma.  *Id.* at 289.  The Court rejected as a basis for jurisdiction "one, isolated occurrence and whatever inferences can be drawn therefrom."  *Id.* at 295.  It elaborated:

> [F]inancial benefits accruing to the defendant from a collateral relation to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State.  *See also Kulko v. California Superior Court*, 436 U.S. at 94-95.  In our view, whatever marginal revenues petitioners may receive by virtue of the fact that their products are capable of use in Oklahoma is far too attenuated a contact to justify that State's exercise of *in personam* jurisdiction over them.

*Id.* at 299.  Accordingly, where no minimum contacts are established, the defendant cannot be deemed to have invoked the benefits of the forum's laws; and where defendant has secured no benefit, it is fundamentally unfair to subject him to the forum's sanctions or regulations.

Likewise, in *Eaton Corp. v. Maslym Holding Co.*, 929 F.Supp. 792 (D.N.J. 1998), the Court held that nothing in the record supported the exercise of personal jurisdiction by the New Jersey court based on the defendant's prior negotiations with the plaintiff and limited contacts with the forum. Plaintiff, an Ohio corporation, sued defendant for breach of trademark licensing agreements. Defendant Maslym Holding Co. was the 100% owner of the shares of Heinemann Europe, a party to the licensing agreements through its American subsidiaries who were, at the time of the agreements, incorporated in New Jersey.  Heinemann Europe was incorporated in Switzerland, and the products it manufactured were never sold or distributed in the U.S.  Neither Heinemann Europe nor Maslym had

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3033
(206) 340-1000

offices, bank accounts, phone lines or listings in New Jersey; nor did either own or lease property there; nor did it have employees, agents or representatives within the state; nor did it pay U.S. taxes. The Court was also asked to consider the prior negotiations of the parties, which entailed routine communications within New Jersey, and the future consequences of the parties' contractual relationship over the ten year term of the licensing agreements. The Court also weighed factors such as New Jersey's interest in hearing the dispute, the burden to the non-resident defendant and the plaintiff's interest in obtaining relief.  After evaluating these factors, the Court held:

> The unusual confluence of circumstances presented here -- a foreign defendant, New Jersey's minimal or nonexistent interest in this matter, and, most importantly, the unenforceability of the court's judgment -- make plaintiff's difficulties seem slight in comparison.  Notwithstanding plaintiff's litigation concerns, the court will not "spin" its wheels" on a fruitless venture which would only waste the court's -- and the parties' -- time and effort (footnote omitted).

*Id.* at 799-800.

In the case at bar, defendant has the same or fewer attenuated ties to Washington as those in *Worldwide Volkswagen* and *Eaton Corp.*  Defendant is a French company with its principal place of business in France.  It does not conduct or transact business in Washington; it does not solicit or advertise here; it does not maintain offices, telephone lines or listings. In short, defendant has not established any meaningful contacts within Washington by invoking the benefits of Washington law or by establishing systematic and continuous ties to the State.  The Court should also bear in mind the Supreme Court's caution that such a burden on international non-residents is unique and "should have significant weight in assessing the reasonableness of stretching the long arm personal jurisdiction over national borders." *Asahi Metals*, 480 U.S. at 114, 107 S.Ct. at 1033.  Additionally, plaintiffs' interest in litigating in Washington can amount to nothing more than a territorial accommodation of a single party to this action, and one with only an indirect economic interest in the claim since it is not the

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3033
(206) 340-1000

owner and not a party to the contracts with Bureau Veritas, S.A Finally, Washington's interest in hearing this dispute are virtually non-existent.  The laws of Washington or even substantive Federal maritime law will not  govern this dispute (*see, Sundance Cruises Corporation v. American Bureau of Shipping,* 7 F.3d 1077 (2d Cir. 1993), *cert. den.* 114 Sup. Ct. 1399 (1994)) and the due process rights of defendant surely warrant greater consideration than the alleged contractual interests of a foreign plaintiff, the Bahamian owner of the WINDSONG.  It appears, given the massiveness of this case, that judicial economy would be better served by allowing French or Bahamian courts to adjudicate the dispute.  See POINT II, *infra*.

## II.     THE COURT OF NANTERRE, FRANCE IS THE EXCLUSIVE FORUM FOR THIS DISPUTE.

Foreign forum selection clauses are presumptively enforceable and clauses in maritime contracts[1], calling for litigation in foreign jurisdiction, have been enforced time and again by U.S. Courts.

The United States Supreme Court, in *Bremen v. Zapata Off-Shore*, 407 U.S. 1 (1972), established the basic law concerning the enforceability of forum selection clauses.  The Supreme Court held that forum selection clauses are *prima facie* valid and should be enforced unless it is shown by the resisting party that enforcement would be unreasonable under the circumstances.  *Id.* at 15. Unreasonableness potentially exists only where: (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape the enforcement will, for all practical purposes, be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law

---

[1] Plaintiffs have conceded that the contracts in issue are maritime in nature.  See Complaint, Paragraph 2-3.

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3033
(206) 340-1000

will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.  *Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993).  The burden is placed squarely on the party seeking to avoid enforcement of the clause and that party must show the clause is unreasonable for one of the enumerated reasons.

The Supreme Court, in *Vimar Seguros Reaseguros, S.A. v. M/V SKY REEFER*, 515 U.S. 528 (1995), subsequently dealt with a forum selection clause contained in an ocean bill of lading. Resolution of the issue was made even more difficult by the fact that the Court had to consider whether a clause, calling for arbitration in Tokyo, was prohibited by a federal statute, specifically, section 1303(8) of the United States Carriage of Goods by Sea Act.  46 U.S.C. §1300, *et seq.* ("COGSA").  The questions which the Court had to wrestle with was whether the clause was enforceable in light of section 1303(8) of COGSA, which invalidates any term of a bill of lading which lessens the carrier's duties and liabilities.  Put simply, the cargo owner argued vehemently that a clause in the bill of lading which required it to prosecute its claim in Japan, with respect to a shipment transported from Morocco to Massachusetts, was a *de* facto violation of COGSA.

The Supreme Court ruled that the arbitration clause did not violate Section 1303(8) because that section concerns the carrier's substantive liability for loss or damage to cargo under COGSA, not the means or costs of enforcing that liability.  *SKY REEFER*, *supra*, at 534.  Under the holding of *SKY REEFER*, a forum selection clause in a bill of lading is presumptively enforceable, and the burden is on the party seeking to avoid enforcement of the clause to establish that the substantive law to be applied "will reduce the carrier's obligations to the cargo owner below what COGSA guarantees." *SKY REEFER*, *supra*, at 539.  Here no such constraint exists making application of the *SKY REEFER* doctrine even more compelling.

The Ninth Circuit extended the reach of *SKY REEFER* in *Firemen's Fund Ins. Co. v. M.V. DSR ATLANTIC*, 131 F.3d 1336 (1997).  There the Court of Appeals reversed as an abuse of discretion the District Court's denial of the application of a Forum Selection clause in a bill of lading applicable to a shipment from France to Oakland, California.  The Forum Selection clause mandated

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3033
(206) 340-1000

disputes be determined by the courts in Seoul, South Korea.  Citing *Bremen v. Zapata Off-Shore, supra,* for the proposition that a forum selection is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances," the Ninth Circuit rejected all possible arguments against enforcement of the clause.  In addition to finding the forum selection clause did not violate the COGSA, the Court found that (1) the plaintiff had not shown that enforcement of the forum clause would be unreasonable; (2) the clause did not contravene a strong policy of the forum; (3) there was no merit in plaintiff's claim that the clause should be invalidated because it was a contract of adhesion in a "standard form bill of lading."

The *SKY REEFER* cases have upheld Forum Selection clauses in standard form bills of lading which require the parties to travel to Asia even when the shipment in question did not even come close to Asia.  Here the Forum Selection clause provides for litigation in France—which happens to be where many of the witnesses are located and where many of the critical events occurred.

**III.    THE COMPLAINT SHOULD BE DISMISSED ON THE GROUNDS OF FORUM NON CONVENIENS**

Whether or not this Court finds that personal jurisdiction exists over Bureau Veritas S.A., it should dismiss the complaint on the grounds of *forum non conveniens* because the vast majority of witnesses with knowledge of facts relevant to the contested issues in this case as well as the bulk of relevant documents are located in France. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839 (1947)

The *forum non conveniens* doctrine permits a court to decline to hear a case despite the existence of jurisdiction, out of consideration for the interests of the litigants and in the interests of justice. *Mediterranean Golf, Inc. v. Hirsch*, 783 F.Supp. 835 (D.N.J. 1991), *citing Gulf Oil Corp. v. Gilbert*, *supra* (granting motion to dismiss on *forum non conveniens* grounds in contract dispute; and action transferred to France, despite existence of New York choice of law clause in contract, where

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3033
(206) 340-1000

1
2
3
4

relevant witnesses and evidence were located in France, and related action commenced by plaintiff was already pending in France).  The analysis under a motion to dismiss on the basis of inconvenient forum is flexible and should be decided on a case by case basis.  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252 (1981).

5
6
7

An evaluation of a motion to dismiss on the grounds of *forum non conveniens* has several stages.  The first level of inquiry requires a determination of the degree of deference to be accorded to a plaintiff's choice of forum.  Iragorri v. United Techs. Corp., 274 F.3d 65, 73 (2d Cir. 2001).

8
9

The factors to be considered include:

10
11
12
13
14
15
16

Thus, factors that argue against *forum non conveniens* dismissal include the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense.  On the other hand, the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons -- such as attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant resulting from litigation in that forum -- the less deference the plaintiff's choice commands.   Haidee Iragorri, v. United Technologies Corporation And Otis Elevator Company, 274 F.3d 65, 72 (2nd Cir. 2001).

17
18
19
20
21
22
23
24

The next inquiry for a district court deciding such a motion is whether there is an alternative adequate forum to hear the case.  *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170 (3d Cir. 1988).  The alternative forum "need not offer all remedies and benefits of the plaintiff's original choice."  *Cliff-Neddrill Turnkey Int'l-Oranjestad v. M/T Rich Duke*, 734 F.Supp. 142 (D.Del. 1990).  Rather, an adequate alternative forum exists if the defendant is amenable to process in the proposed transferee forum.  *Piper Aircraft Co.*, supra, at 254, fn. 22.

25
26

A determination of *forum non conveniens* represents the exercise of judicial discretion by trial judges appraising the practical inconveniences posed to the litigants and to the court should a

( CV04-1368RSM) MEMORANDUM IN SUPPORT OF MOTION BY
DEFENDANT BUREAU VERITAS, S.A. TO DISMISS COMPLAINT - 13

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3033
(206) 340-1000

1
2   particular action be litigated in one forum rather than another. *Lony v. E.I. DuPont de Nemours &*
3   *Co.*, 886 F.2d 628 (3d Cir. 1989). Added to that are the "interests of justice" factors, which fall into
    two broad categories -- public and private. *Id*. The private interests to be considered are:
4
5       .....relative ease of access to sources of proof; availability of compulsory process for
6       attendance of unwilling, and the cost of obtaining willing, witnesses; possibility of
        view of premises, if view would be appropriate to the action; and all other practical
7       problems that make a trial of a case easy, expeditious and inexpensive. Gulf Oil Corp.
        v. Gilbert, 330 U.S. 501, 508 (1947); Lony v. E.I. DuPont De Nemours & Co., 935
8       F.2d 604, 609 (3d Cir. 1991).
9   The public interests to consider include:
10
11      ....the administrative difficulties flowing from court congestion; the "local interest in
        having localized controversies decided at home"; the interest in having the trial of a
12      diversity case in a forum that is at home with the law that must govern the action; the
        avoidance of unnecessary problems in conflict of laws, or the application of foreign
13      law; and the unfairness of burdening citizens in an unrelated forum with jury duty.
        Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 (1981) citing Gulf Oil Corp. v. Gilbert,
14      330 U.S. 501, 508-509 (1947).

15  The above stated public factors need only be considered in the event that the private interests
16  do not favor dismissal. Baumgart v. Fairchild Aircraft Co., 981 F.2d 824 (5th Cir. 1993). If the
17  balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome
18  for the defendant or the court, dismissal is proper. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 256
19  (1981).
20      A.      The Private Interests Weigh In Favor Of Dismissal
21
22      Because litigation in France or the Bahamas would be the more practical course, the complaint
23  should be dismissed on *forum non conveniens* grounds. An evaluation of factors such as the ease of
24  access to sources of proof, availability of compulsory process over unwilling witnesses and the cost of
25  attendance of willing witnesses leads to the unmistakable conclusion that France or the Bahamas
26  provide an adequate alternative forum -- indeed, absent excessive deference to the plaintiffs choice of

---

( CV04-1368RSM) MEMORANDUM IN SUPPORT OF MOTION BY
DEFENDANT BUREAU VERITAS, S.A. TO DISMISS COMPLAINT - 14

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3033
(206) 340-1000

forum, France or the Bahamas are superior fora to the State of Washington.  Virtually all the persons having knowledge of the facts which appear to be at the crux of this case, i.e., the design, construction and inspection of the vessel, are located in France, be they employees of the French shipyard or of Bureau Veritas, S.A. (Frey Declaration, Paragraphs 12, 13). The actual manufacturer of the engine is also a French entity and the engines were manufactured, sold and installed in France. Moreover, critical evidence relating to the attempts by the crew and French Navy to extinguish the fire alleged to have caused the loss also lie with French Naval forces in France.

In contrast, should the case be litigated here, Defendant will be compelled to incur the expense of transporting all witnesses with knowledge of these facts here, or, alternatively, go without this testimony, which could well be extremely prejudicial to Bureau Veritas S.A.'s defenses.. *See Schertenleib v. Traum*, 589 F.2d 1156 (2d Cir. 1978) (holding that absence of live testimony at trial is a handicap grave enough to warrant dismissal); *Int'l Commodity Servs. v. Banque Populaire Suisse*, 652 F.Supp. 1289 (S.D.N.Y. 1987)(dismissing on *forum non conveniens* grounds after concluding that unavailability of key witnesses and the absence of live testimony outweighed the plaintiff's choice of home forum); *see also Kultur Int'l Films, Ltd. v. Covent Garden Pioneer FSP, Ltd.*, 860 F.Supp. 1055 (D.N.J. 1994).  Cost concerns associated with discovery are also crucial.  Given that virtually all witnesses with knowledge of the design and construction of the vessel are located in France, and the bulk of the documentation concerning the vessel's design, construction and loss are in France, it will be exorbitantly costly for the parties to travel to France to examine the documents, make copies and take depositions and, thereafter, to transport those same witnesses here for trial.

Further, in evaluating a *forum non conveniens* motion, the district court need not pinpoint specific pieces of evidence, measure their probative value and then determine their availability at trial, but rather, must simply identify generically what sources of proof are likely to be critical to the

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3033
(206) 340-1000

plaintiff's cause of action and then ascertain whether the plaintiff will enjoy access to those sources of proof at trial if his claim is litigated in the alternative forum.  *Lacey* 932 F.2d at 184.  In the case at bar, all documentary evidence generated by Bureau Veritas, S.A. during the construction of the vessel are located in France.  All documents from the French shipyard, those relating to the design and construction of the engines and those regarding the French Navy's involvement in the loss and scuttling of the vessel are also located in France. Thus, the sum of the practical issues to be considered in assessing the private interests weigh in favor of litigating in France, or, alternatively,  the Bahamas where documents relating to the registry and maintenance of the vessel by its Bahamian owner are located, and this action should be dismissed.

   B.  The Public Interests Also Support Dismissal Of This Action

        Although the Court need not consider the public interests if it is persuaded that the private ones warrant dismissal, Bureau Veritas, S.A. submits that the public interests also favor dismissing this action.  Because Washington's interest in adjudicating this case is minimal at best, and in furtherance of judicial economy, the public interests are better served by litigating in France.

        The only connection that this case has with Washington is the fact that the current agent for the owner and operator of the vessel is incorporated there.  The loss that is the heart of this dispute did not occur in Washington.  The damage did not occur here but in the Bahamas or in France. No conduct forming the basis of any allegation in the complaint against Bureau Veritas, S.A. occurred in Washington.   Washington law will not apply as discussed in Point I. No legally cognizable Washington interest requires protection.   As such, the significance of this case to the forum is minimal.

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3033
(206) 340-1000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

The magnitude of the discovery in this case is massive, involving allegations of wrongdoing over the 15 year life of this vessel.  Persons with knowledge and relevant documents span the globe but it is clear that the major discovery will occur in France and in the South Pacific. There will be dozens of depositions and probably hundreds of thousands if not millions of pages of documents to be produced.    Numerous and complex legal, factual and technical issues regarding international rules and regulations in ship safety and design will have to be considered, none of which involve Washington. In *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 837 (5th Cir. 1993) the Court of Appeals affirmed the District Court's dismissal on forum non conveniens grounds of a Texas case involving an airline crash case in Germany of a plane manufactured in Texas, even though the court had proper jurisdiction and venue.   The Court stated, "While Appellants correctly assert that both Germany and the State of Texas have contacts with the subject matter, we agree with the district court's determination that, 'on balance, …Germany is the focal point of this case.'"  See also, *Lueck v. Sundstrand Corp.*, 236 F.3d 1137 (9th Cir. 2000).   Neither this Court nor Washington citizens should be subjected to the time and expense of a complex litigation which is fundamentally between a Bahamian citizen and a French citizen, arising out of a loss occurring in the South Pacific, allegedly as a result of negligent conduct occurring primarily in France and New Zealand.

## CONCLUSION

For each of the three foregoing reasons, the complaint should be dismissed.

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3033
(206) 340-1000

1    Dated this 22nd day of October, 2004.

2                                                      COZEN O'CONNOR

3

4                                                         /s/ Rodney Q. Fonda
                                                      Rodney Q. Fonda, WSBA 6954
5                                                     Attorneys for Defendant Bureau Veritas, S.A.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

( CV04-1368RSM) MEMORANDUM IN SUPPORT OF MOTION BY
DEFENDANT BUREAU VERITAS, S.A. TO DISMISS COMPLAINT - 18

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
SUITE 5200
WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3033
(206) 340-1000